AC-2000-63                                                          1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Margarita Sánchez, et al.<br>　　Demandantes-Apelantes<br><br>　　v.<br><br>Secretario de Justicia, et al.<br>　　Demandados-Apelados | Certiorari<br><br>2000 TSPR 175 |
| --- | --- |

Número del Caso: AC-2000-63

Fecha: 30/noviembre/2000

Tribunal de Circuito de Apelaciones:

　　　　　　　　　　　　　　　　Circuito Regional I

Juez Ponente:

　　　　　　　　　　　　　　　　Hon. Héctor Urgell Cuebas

Abogados de la Parte Apelante:

　　　　　　　　　　　　　　　　Lcda. Nora Vargas Acosta
　　　　　　　　　　　　　　　　Lcda. Sheila I. Vélez Martínez
　　　　　　　　　　　　　　　　Lcdo. Charles Hey Maestre

Oficina del Procurador General:

　　　　　　　　　　　　　　　　Hon. Gustavo A. Gelpí
　　　　　　　　　　　　　　　　Procurador General

Materia: Sentencia Declaratoria, Injunction Permanente, etc.

　　　Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Margarita Sánchez et al

  Demandantes-Apelantes

     v.                                            AC-2000-63

Secretario de Justicia et al

  Demandados-Apelados


RESOLUCION

San Juan, Puerto Rico, a 30 de noviembre de 2000.

    Acogido el escrito como una solicitud de *certiorari* por ser el recurso apropiado, se declara no ha lugar.

    Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton emitió un Voto Particular Disidente al cual se unió la Juez Asociada señora Naveira de Rodón. El Juez Asociado señor Fuster Berlingeri no intervino.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Margarita Sánchez et al

   Demandantes-Apelantes

   v.                                              AC-2000-63

Secretario de Justicia et al

   Demandados-Apelados

Voto Particular Disidente emitido por el Juez Asociado señor Hernández Denton al cual se une la Juez Asociada señora Naveira de Rodón

San Juan, Puerto Rico, a 30 de noviembre de 2000.

De la sentencia del Tribunal de Circuito de Apelaciones que desestimó la demanda de epígrafe por falta de legitimación activa, recurren los demandantes en apelación ante este Foro.

Por entender que los aquí apelantes tienen legitimación activa para proseguir la presente acción, respetuosamente disentimos de la mayoría de este Tribunal.

I

El 23 de junio de 1998 los recurrentes presentaron una petición de sentencia declaratoria e injunction permanente ante el Tribunal de Primera Instancia contra el Secretario de Justicia y el Estado Libre Asociado de Puerto Rico impugnando la                                              constitucionalidad

del artículo 103 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4065. Este artículo penaliza a "[t]oda persona que sostuviere relaciones sexuales con una persona de su mismo sexo o cometiere el crimen contra natura con un ser humano". Art. 103 Código Penal, *supra*. La pena fija impuesta por la comisión de este delito es de diez (10) años.

El grupo de demandantes consiste en una pareja de mujeres adultas que conviven y sostienen una relación afectiva entre sí; dos parejas de hombres adultos en igual situación y; la organización American Civil Liberties Union ("ACLU") en representación de algunos de sus miembros en Puerto Rico que incurren en el tipo de conducta íntima consensual que el mencionado artículo prohíbe. Alegaron, en síntesis, que el artículo 103 del Código Penal puertorriqueño viola varios de sus derechos fundamentales, específicamente, el derecho a la Intimidad, la Igual Protección de las Leyes y el Debido Proceso de Ley. Arguyeron tener un temor fundado de ser víctimas de persecución, hostigamiento y de ser procesados criminalmente al amparo del referido estatuto.

El 25 de agosto de 1998, el E.L.A. solicitó la desestimación de la demanda. Alegó que los demandantes carecían de acción legitimada pues ninguno de ellos había sido acusado al amparo del estatuto impugnado. En oposición a esta moción los demandantes relataron cómo, mientras participaba de unas vistas públicas ante la Cámara de Representantes de Puerto Rico, la Rvda. Margarita Sánchez de León fue apercibida por uno de los miembros de esa Cámara Legislativa de que, por ser lesbiana, podría ser procesada penalmente bajo el artículo 103 del Código Penal, *supra*.

Señalaron además que, ante ese mismo foro, el Subsecretario de Justicia manifestó su disposición de poner en vigor el mencionado estatuto. Oposición a Moción de Desestimación, Ap. IV, págs. 2-3. Estos hechos no han sido controvertidos. Finalmente, los demandantes argumentaron que tal situación les colocaba ante una amenaza real de procesamiento criminal, por lo que no era necesario haber sido arrestados para impugnar la constitucionalidad de este artículo.

Así las cosas, el Tribunal de Primera Instancia denegó la Moción de Desestimación del Estado reconociéndole a los demandantes legitimación para impugnar la inconstitucionalidad del artículo 103 del Código Penal. Inconforme, el Estado acudió en apelación ante el Tribunal de Circuito de Apelaciones. Dicho tribunal, mediante sentencia del 28 de abril de 2000, revocó la determinación del foro de instancia y desestimó la demanda.

Es en apelación de esta sentencia que los demandantes acuden ante nos.

II

En Puerto Rico, para que un Tribunal pueda entender en un pleito es necesario que exista una genuina controversia entre partes encontradas y que éstas tengan un interés real en obtener un remedio que les afecte jurídicamente. E.L.A. v. Aguayo, 80 D.P.R. 552 (1958). La finalidad de esta exigencia es asegurarle al Tribunal que las partes litigantes tienen un interés de tal índole que, con toda probabilidad, proseguirán su causa de acción

vigorosamente y traerán a la atención del Tribunal las cuestiones en controversia adecuadamente. Hernández Agosto v. Romero Barceló, 112 D.P.R. 407, 413 (1982). Esta capacidad para realizar con eficacia actos procesales y comparecer como parte demandante se conoce propiamente como legitimación activa. Col. Ópticos de P.R. v. Vani Visual, 124 D.P.R. 559, 563 (1989).

A tales efectos, para estar legitimado todo demandante tiene que demostrar haber sufrido un daño claro y palpable; real, inmediato y preciso y no abstracto e hipotético. Asimismo, la causa de acción ejercitada debe surgir bajo el palio de una ley o de la Constitución y debe haber una conexión entre el daño sufrido y la causa de acción ejercitada. Fundación Arqueológica v. Departamento de la Vivienda, 109 D.P.R. 387, 392 (1980); Hernández Agosto v. Romero Barceló, supra; Hernández Torres v. Hernández Colón, 131 D.P.R. 593 (1992); Asociación de Maestros v. Torres, 137 D.P.R. 528 (1994).

En cuanto a la legitimación activa de una asociación que intenta representar los intereses de sus miembros en los tribunales, hemos señalado que deben considerarse, además, los siguientes criterios: 1) que los miembros de la asociación tengan legitimación activa para demandar a nombre propio; 2) que los intereses defendidos estén relacionados con los objetivos de la organización; y 3) que la reclamación y el remedio solicitado no requieran la participación individual de los miembros en el pleito. Col. Ópticos de P.R. v. Vani Visual, supra.

De otra parte, reiteradamente esta Curia ha interpretado los requisitos sobre legitimación activa de forma flexible y liberal, particularmente al atender reclamos dirigidos contra las agencias y funcionarios gubernamentales. García Oyola v. Junta de Calidad Ambiental, res. el 21 de febrero de 1997, 142 D.P.R. ___; Col. Ópticos de P.R. v. Vani Visual, supra, pág. 564; Pacheco Fraticcelli v. Cintrón Antonsanti, 122 D.P.R. 229, 237 (1988); Solís v. Municipio, 120 D.P.R. 53, 56 (1987); Salas Soler v. Srio. de Agricultura, 102 D.P.R. 716, 719 (1974). Este enfoque "responde a un reconocimiento de que para cumplir con nuestra responsabilidad constitucional en esta época debemos interpretar liberalmente los requisitos de legitimación activa de aquellos que acuden al foro judicial en auxilio de nuestra jurisdicción. [. . .] De lo contrario, cerramos las puertas de los tribunales a personas y entidades que han sido adversamente afectadas por actuaciones del Estado o de entidades particulares y que presentan reclamaciones que pueden ser debidamente atendidas por el foro judicial." Col. Ópticos de P.R. v. Vani Visual, supra, pág. 564 (citas omitidas).

En cuanto a la necesidad de que un litigante haya sufrido un daño real como requisito previo al reconocimiento de legitimación activa, resulta pertinente reseñar lo resuelto sobre este particular por el Tribunal Supremo de Estados Unidos en casos en que se cuestiona la constitucionalidad de estatutos penales. En particular, debemos considerar las

situaciones en que el daño sufrido está constituido por la amenaza de ser encausado criminalmente.[1]

En múltiples ocasiones el Tribunal Supremo de Estados Unidos ha atendido reclamos de litigantes no procesados por las leyes cuya constitucionalidad impugnan. Así por ejemplo, en Doe v. Bolton, 410 U.S. 170 (1973), ese Foro le reconoció legitimación activa, o "standing", a un médico que impugnó la constitucionalidad de un estatuto prohibitivo de ciertas prácticas abortivas. Al disponer sobre este asunto expresó:

> We conclude, however, that the physician-appellants... do have standing despite the fact that the record does not disclose that any one of them has been prosecuted, or threatened with prosecution, for violation of the State's abortion statutes. The physician is the one against whom these criminal statutes directly operate in the event he procures an abortion that does not meet the statutory exceptions and conditions. The physician-appellants, therefore, assert a sufficiently direct threat of personal detriment. They should not be required to await and undergo a criminal prosecution as the sole means of seeking relief. Doe v. Bolton, *supra*, pág. 188 (énfasis suplido). *Véase además*, Planned Parenthood v. Danforth, 428 U.S. 52, 62 (1976).

De esta forma, el Tribunal Supremo federal reconoció que el grado de amenaza necesario para que un litigante ostente legitimación activa, puede surgir del hecho de que el estatuto impugnado vaya dirigido específicamente a prohibir el tipo de actividad que el demandante realice.

En similar situación se encuentran los litigantes de este caso frente al artículo 103 de nuestro Código Penal. Toda vez que el estatuto penal puertorriqueño criminaliza el sostener relaciones sexuales con personas del mismo sexo, los demandantes están ante una ley dirigida a prohibir precisamente el tipo de conducta íntima y consensual que ellos realizan, encontrándose por tanto expuestos a una amenaza directa de detrimento personal. Cabe señalar, además, que distinto a Doe, *supra*, en el caso de autos los demandantes sí han recibido ciertas amenazas personales de ser acusados por el delito impugnado, circunstancia que, ciertamente agrava su situación.

Igualmente, se ha señalado que no es necesario que un demandante haya sido arrestado como requisito previo para cuestionar la validez de un estatuto criminal cuando el mismo puede disuadir el ejercicio de un derecho constitucional. Babbitt v. United Farm Workers, 442 U.S. 289, 298 (1979); Steffel v. Thompson, 415 U.S. 452, 459 (1974); Epperson v.

---

[1] Resultan además persuasivas las determinaciones de varios tribunales estatales que han permitido el acceso a litigantes que acuden ante esos Foros cuestionado la validez de los estatutos de sodomía a pesar de que ninguno de ellos haya sido arrestado o acusado por ese delito. *Véanse* Bryant v. Picado, 996 S.W.2d 17, 19 (Ark. 1999); Gryczan v. State, 942 P.2d 112 (Mont. 1997); Campbell v. Sudquist, 926 S.W.2d 250 (Tenn. 1996).

Arkansas, 393 U.S. 97 (1968). *Véase además*, <u>United Food & Commercial Workers Int'l</u> v. <u>IPB, Inc.</u>, 857 F.2d 422 (8$^{vo}$ Cir. 1988).

En <u>Babbitt</u>, *supra*, un sindicato cuestionó una ley estatal que tipificaba como delito, entre otras cosas, utilizar publicidad engañosa a fin de que los consumidores desistieran de comprar productos agrícolas. El Tribunal Supremo rechazó el argumento de falta de justiciabilidad al resolver que "[w]hen contesting the constitutionality of a criminal statute, 'it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights.'" <u>Babbitt</u>, supra, en la pág. 298. Se recalcó, además, que un litigante tiene legitimación cuando manifiesta su intención de comportarse conforme a una conducta concebiblemente protegida por la Constitución; la conducta está prohibida por ley y; hay un temor real de ser procesado por ella. <u>Babbitt</u>, *supra*. No obstante, cuando el temor de los litigantes de ser encausados criminalmente es meramente imaginario o especulativo, éstos no tienen derecho al reconocimiento de su legitimación en causa. <u>Babbitt</u>, *Id*.

En el caso de autos, los demandantes claramente, según han manifestado, continuarán realizando el tipo de conducta proscrita por ley, conducta que, arguyen, está protegida constitucionalmente. Asimismo, las afirmaciones realizadas por los funcionarios públicos, indicativas de su intención de encausar criminalmente a los violadores de esta ley, ciertamente han ocasionado un temor fundado en los litigantes de ser procesados por una conducta concebiblemente protegida constitucionalmente. Esto es cimiento suficiente para reconocerle a los demandantes el interés adecuado para proseguir esta acción vigorosamente.

A similar conclusión ha llegado el Tribunal Supremo de Montana al resolver un asunto de análoga naturaleza:

> Because the legislature does not regard the statute as moribund and because enforcement has not been foresworn by the Attorney General, we agree that Respondents suffer a legitimate and realistic fear of criminal prosecution along with other psychological harms. Respondents are precisely the individuals against whom the statute is intended to operate. This is sufficient to give Respondents standing to challenge the constitutionality of the statute. Moreover, to deny Respondents standing would effectively immunize the statute from constitutional review. <u>Gryczan v. State</u>, 942 P.2d 112, 120 (Mont. 1997)[2]

---

[2] *Véase además* <u>Babbitt</u>, *supra*, pág. 302 ("the State has not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices. Appellees are thus not without some reason

Indiscutiblemente la normativa mencionada, unida a la manifiesta tendencia liberalizadora que sobre este asunto ha sostenido este Tribunal, Col. Ópticos de P.R. v. Vani Visual, *supra*, no pueden llevar sino a la conclusión de que los demandantes de epígrafe, en efecto, ostentan legitimación activa. El hecho de que no hayan sido arrestados o acusados al amparo del mencionado estatuto, sin más, no les priva de capacidad para comparecer ante los tribunales de Puerto Rico, pues esta sola circunstancia no hace del daño que puedan sufrir menos claro y real. Definitivamente, no es hipotético un temor fundamentado en el conocimiento de que con su conducta, los litigantes se exponen a una rigurosa pena de cárcel.

Finalmente, estimamos que también debe reconocérsele legitimación activa al ACLU por tener capacidad para defender los derechos de sus miembros que incurren en conducta punible por el referido artículo 103 según los parámetros que para ello ha establecido nuestra jurisprudencia. *Véase*, Col. Ópticos de P.R. v. Vani Visual, *supra*. En primer lugar, por las razones mencionadas, los miembros de la ACLU tienen legitimación activa para demandar a nombre propio. Segundo, los intereses defendidos en este caso por la organización están íntimamente relacionados con sus objetivos (la defensa de los derechos civiles). Por último, en el presente recurso, no se requiere la participación individual de los miembros en el pleito. En cuanto a este factor, hemos considerado como determinante la naturaleza del remedio solicitado. Si es de naturaleza interdictal, sentencia declaratoria o cualquier otro remedio en beneficio de todos los miembros perjudicados, le será reconocida legitimación activa a la agrupación. Col. Ópticos de P.R. v. Vani Visual, *supra*, pág. 566. Siendo el recurso presentado en el caso de epígrafe uno del mencionado carácter, este tercer requisito queda también cumplido.

Por los fundamentos expuestos, expediríamos el auto de *certiorari* presentado por los peticionarios, revocaríamos la sentencia del Tribunal de Circuito de Apelaciones y confirmaríamos la resolución del Tribunal de Primera Instancia. Por ende, disentimos del criterio de una mayoría de este Tribunal.


Federico Hernández Denton
Juez Asociado

---

in fearing prosecution for violation of the ban on specified forms of consumer publicity").